JAMES T. YATES, Plaintiff-Appellant, *v.* FIREMAN'S FUND INSURANCE COMPANIES, Defendant-Appellee

NO. 11123

(CIVIL NO. 79627)

MARCH 11, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiff James T. Yates (Yates) appeals the judgment below in favor of defendant Fireman's Fund Insurance Companies (Fireman's Fund). We affirm.

## STATEMENT OF FACTS

After a bench trial the lower court found the following facts: On February 26, 1981, Yates owned a Volkswagen (the VW) with a modified body which was insured by Fireman's Fund. (Hereinafter we will refer to Yates' auto insurance policy as the Policy.) The Policy insured the VW for its actual cash value in case of direct and accidental loss. On July 14, 1982, Yates placed the VW in the custody of Preferred Motor Cars, Ltd. (PMC), and entered into a consignment contract (contract) authorizing PMC to sell the VW for no less than $5,500. Yates agreed to pay PMC a fee of 10% of the sale price to be deducted from the sale proceeds. On August 26, 1982, PMC sold the VW for $3,651 but on September 2, 1982, told Yates that it had been sold for $3,000, and that he would receive $2,700. Yates then released the VW's title to PMC and obtained a receipt from PMC stating that he would be paid $2,700 when the "title clears" the Department of Motor Vehicles. On October 12, 1982, when Yates had not received his $2,700, he lodged a complaint with Honolulu Police Officer Glen Kajiyama (Kajiyama), who, after checking, informed Yates that title to the VW was still in his name. Yates received the $2,700 from PMC in November 1982.

On the grounds that PMC's actions constituted theft, Yates' attorney demanded $5,300 as insurance benefits under the Policy. The $5,300 was arrived at by subtracting the $2,700 paid to Yates by PMC from what Yates' attorney stated was the VW's $8,000 appraised value. When Fireman's Fund rejected the demand, Yates commenced the action below seeking $5,300 for the loss of his vehicle, $25,000 as general damages, and $500,000 as punitive damages, alleging breach of the Policy and bad faith adjustment of his claim.

On December 20, 1985, the trial court entered its Findings of Fact (FOF), Conclusions of Law (COL) and a judgment. A timely appeal followed.

The dispositive question in this appeal is whether the trial court was

correct in holding that "Yates' voluntary and intentional surrender of title to the VW did not constitute a 'loss' of the VW within the meaning of the Policy."[1] We answer yes.

### A.

Yates attacks as clearly erroneous the trial court's FOF 12, which reads as follows:

12. On September 2, 1982, Yates was told by PMC that the VW had been sold for $3,000, not $3,651, and that per the consignment contract, his 90% share was $2,700, not $3,285.90. Yates then released title to the VW to PMC.

He also argues that COL 1 and 2 are wrong. COL 1 and 2 read:

1. The policy in question provided coverage for direct and accidental loss. The circumstances of the alleged "loss" by plaintiff is not within the meaning of the policy.

2. Yates' voluntary and intentional surrender of title to the VW did not constitute a "loss" of the VW within the meaning of the Policy. *Paris v. State Farm Mut. Auto. Ins. Co.*, 365 So.2d 439 (Fla. App. 1978).

Upon careful review of the record, we find no error.

### B.

A trial court's findings of fact will not be set aside on appeal unless clearly erroneous. *Maui Ranch Estates Owners Association v. County of Maui*, 6 Haw. App. ___, 724 P.2d 118 (1986); *DeMund v. Lum*, 5 Haw. App. 336, 690 P.2d 1316 (1984). Findings are clearly erroneous where they are not supported by substantial evidence in the record or where the appellate court is left with a definite and firm conviction that a mistake has been made. *DeMund v. Lum, supra*.

On the basis that his recollection of the facts is more accurate and reliable and therefore more relevant and credible than any other evidence, Yates contends that he was not aware of how much the VW

---

[1] In findings of fact nos. 13, 14, and 15, the trial court found that the VW had been deleted from the Policy and was not a covered vehicle when it was sold by PMC on August 26, 1982. The trial court's conclusions were not based on those findings and Yates' challenge of them is irrelevant.

actually sold for when he transferred its title and, therefore, FOF 12 is clearly erroneous.[2] However, Kajiyama's testimony refutes Yates' contention. Kajiyama testified that:

> Mr. Yates further stated that he was contacted by Preferred Motor Cars during the end of August, 1972 [sic], and they informed him that he [sic] had found a buyer for his vehicle.
>
> On September 2d, 1972 [sic], Mr. Yates had gone down to the lot; and at this time he was informed that his vehicle had been sold for $3,000. His share would be $2,700.
>
> Mr. Yates was then instructed to sign the ownership papers of the vehicle to which he complied. Written in the sales contract was a clause that read Preferred Motors would pay Mr. Yates when the vehicle cleared registration. And as of October 12th, 1982, Mr. Yates still had not received word that any payment was forthcoming; and he was always given various excuses that paper work was lost.

The weight and credibility of the witnesses is for the trial court to determine, and we will not disturb that determination on appeal. *Bow v. Nakamura,* 6 Haw. App. ___, 719 P.2d 1103 (1986); *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 681 P.2d 580 (1984). FOF 12 indicates the trial court found Kajiyama's testimony more credible as to Yates' knowledge and reason for turning over title to the VW. Kajiyama's testimony is "of sufficient quantity and probative value to justify a reasonable man in reaching a conclusion[,]" *Hong v. Kong,* 5 Haw. App. 174, 176, 683 P.2d 833, 836 (1984), and satisfies the substantial evidence requirement. Additionally, we do not have a definite and firm conviction that a mistake has been made, *Maui Ranch Estates Owners Association, supra; Block v. Lea,* 5 Haw. App. 266, 688 P.2d 724 (1984). Therefore, FOF 12 is not clearly erroneous.

### C.

A trial court's conclusions of law are freely reviewable by this court.

---

[2]Although the wording of FOF 12 is somewhat misleading, since it could be construed as saying that Yates was told that the VW had not been sold for $3,651 and that his share was not $3,285.90, such a construction would not comport with the facts. Yates was only told that the VW had been sold for $3,000 and that his share was $2,700.

*Block v. Lea, supra.* A conclusion of law which is supported by the trial court's findings of fact and which reflects an application of the correct rule of law will not be overturned on appeal. *Nani Koolau Co. v. K & M Construction, Inc., supra.*

Yates argues that the Policy is ambiguous as to the meaning of loss, theft, and larceny, and must be construed to cover his loss. His argument is irrelevant, because the issue is whether Yates suffered a loss by theft or whether he voluntarily and intentionally surrendered title to his VW. The trial court concluded the latter to be the case, COL 1 and 2, *supra,* and we find no error.

We agree with *Paris v. State Farm Mut. Auto. Ins. Co.,* 365 So.2d 439 (Fla. App. 1978), on this issue.[3] In *Paris* the plaintiff entered into an agreement with a car salesman to sell his car, which was insured by the defendant insurance company. Plaintiff delivered his car, the keys, and the certificate of title executed in blank, to the salesman, who was to deposit the proceeds of the sale into the plaintiff's checking account. After selling the car, the salesman deposited his personal check into the plaintiff's bank account. The check was dishonored. The plaintiff filed a proof of claim with the defendant insurance company alleging a theft of his automobile. Coverage was denied on the basis that no loss by theft had occurred, and the plaintiff filed suit against the defendant-insurer. The trial court directed a verdict in favor of the defendant on the basis that there was no loss within the terms of the insurance policy.

On appeal the court affirmed the granting of the directed verdict in favor of the insurer. The court stated that the plaintiff:

> *was not deceived about the transaction,* but *knowingly and voluntarily gave possession* of the vehicle, the keys, and the certificate of title completed in blank to Barbati for the purpose of his selling it and, in compliance with their agreement, to deposit the appropriate amount of the proceeds of the sale into [the plaintiff's] account. In effect, in this case, Barbati may have absconded with the proceeds of the sale by not properly depositing them in [the plaintiff's] account,

---

[3]Yates argues that *Paris* is inapposite in this case because the policy there specifically excluded from coverage "loss due to conversion, embezzlement or secretion by any person in possession of the owned motor vehicle under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance."

However, the court in *Paris* did not rely on the exclusions in reaching its decision but instead based its decision on the definition of "loss" as being "direct and accidental."

*but he did not create a "loss" of the vehicle as that term is defined in the insurance policy.*

*Paris,* 365 So.2d at 440-41 (emphasis added).

As in the *Paris* case, Yates may have had an action against PMC for breach of contract, or for 90% of the $651 he wasn't told about, but that is another case. In the instant case, Yates *voluntarily released title* to the VW to PMC on September 2, 1982, after he was told by PMC that he would receive $2,700 as his share of the sales price. Although the VW was actually sold for more than he had been led to believe, Yates was not deceived about how much he would receive, or that the VW had been sold for less than he had originally instructed. It follows as a matter of law that he voluntarily surrendered the VW's title and there was no "loss" under the Policy.

The trial court's COL 1 and 2 correctly follow FOF 12, reflect the proper application of law to the facts of this case, and may not be disturbed. *Maui Ranch Estates Owners Association, supra.*

Affirmed.

*Madelyn Lukela Perry* for plaintiff-appellant.

*Arthur F. Roeca (Keith K. Hiraoka* with him on the brief; *Case, Kay & Lynch* of counsel) for defendant-appellee.