THOSE CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBER 25693JB, Plaintiffs/Counterdefendants,

v.

CAPRI OF PALM BEACH, INC., Defendant/Counterclaimant/Third Party Plaintiff

v.

THOSE CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBER 02891JB, Third Party Defendants/Counterclaimants.

No. 95–8281–CIV.

United States District Court, S.D. Florida.

April 24, 1996.

William M. Douberley, Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A., Miami, FL, for Plaintiff.

Gary D. Fields, Palm Beach Gardens, FL, for Defendant.

### ORDER GRANTING UNDERWRITERS' MOTION FOR FINAL SUMMARY JUDGMENT, ORDER DENYING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT AND ORDER OF DISMISSAL

MORENO, District Judge.

THIS CAUSE came before the Court upon the Underwriters' Motion for Final Summary Judgment (docket no. 13), filed on January 19, 1996, and Defendant's Motion for Final Summary Judgment (docket no. 14), filed on January 26, 1996.[1]

### FACTUAL BACKGROUND

This case arises out of jeweler's block insurance policies issued by the Underwriters to Defendant Capri of Palm Beach, Inc. ("Capri"), in 1991 and 1993.[2] Defendant presented a claim under the '93 policy for the theft of jewelry which had been entrusted by Defendant to Chaim Steiger, an independent dealer. A stock bag which contained the jewelry in question was stolen from Mr. Steiger's vehicle on May 26, 1993. Mr. Steiger was a dealer in property of the kind insured under the policy, and had taken the jewelry under consignment.

Mr. Steiger presented a claim for the loss of the jewelry under a similar but separate policy that he had with another group of Underwriters. The Underwriters refused to

---

1. The Court uses the term "Underwriters" throughout this Order to refer to both Plaintiffs/Counterdefendants Those Certain Underwriters subscribing to policy number 25693JB (the '93 policy), and Third Party Defendants/Counterclaimants Those Certain Underwriters subscribing to policy number 02891JB (the '91 policy).

2. Defendant argues that there is an issue as to whether the '91 policy was in effect at the time of the loss at issue. The Court finds that whether or not the '91 policy was in effect is irrelevant because the pertinent provisions of both the '91 and the '93 policies are the same.

honor Mr. Steiger's claim because at the time that the jewelry was stolen from Steiger's car, the vehicle was not attended in violation of the unattended vehicle exclusion found in both of the policies at issue in this case.[3] The Underwriters subscribing to the Steiger policy brought a declaratory judgment action against C. Steiger Imports, Inc., in the United States District Court for the Southern District of Florida, Case No. 93–1543–UNGARO–BENAGES. A jury trial was held before United States Magistrate Judge William C. Turnoff and a declaratory judgment was entered in favor of the Underwriters after the jury rendered a verdict in favor of the Underwriters on all counts. Judge Turnoff specifically found that a declaratory judgment in a favor of the Underwriters was appropriate, "because of a violation of the condition which required an employee of the insured to be in or upon his vehicle at the time of the loss."

Despite the jury verdict and the declaratory judgment entered in favor of the Underwriters in the Steiger case, Capri filed a claim under the '93 policy. The Underwriters of the '93 policy denied Capri's claim and subsequently filed this action for declaratory judgment pursuant to 28 U.S.C. § 2201, seeking a determination of their rights and obligations under the policies in question.[4] The Underwriters then jointly filed a Motion for Final Summary Judgment on January 19, 1996. Defendant Capri filed a response to the Underwriters' Motion as well as its own Motion for Final Summary Judgment on January 26, 1996. A hearing on both Motions for Final Summary Judgment was held before the undersigned on March 14, 1996.

## LEGAL STANDARD

Summary judgment is authorized only when, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *See Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judg-

---

**3.** Both the '91 and '93 policies contain the following condition:
 7. This Policy insures against all risks of loss or damage to the above described property arising from any cause whatsoever EXCEPT:
 (I) Loss or damage to property insured while in or upon any automobile, motorcycle, or any other vehicle unless, at the time the loss or damage occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle. This exclusion shall not apply to property in the custody of a carrier as men-

tioned in Section 2 hereof, or in the custody of the Post Office Department as first class registered mail.

**4.** Besides answering the complaint, Defendant Capri also filed a counterclaim for declaratory relief on July 3, 1995, against the Underwriters of the '93 policy. In addition, Capri filed a third party complaint for declaratory relief on November 17, 1995, against the Underwriters of the '91 policy. The Underwriters of the '91 policy then answered the third party complaint and filed a declaratory judgment action of their own against Capri on December 20, 1995.

ment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).

 Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1609–10. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir. 1967).

### *LEGAL ANALYSIS*

The Underwriters argue that Capri's claim is barred by the unattended vehicle exclusion found in both of the policies at issue. In addition, the Underwriters maintain that the exception to the unattended vehicle exclusion is not applicable here because Mr. Steiger was not a carrier. According to the Underwriters, the term "carrier" is not ambiguous and clearly encompasses only those whose primary business it is to transport property, such as air carriers and parcel delivery services. Since Mr. Steiger is a dealer whose primary business is to sell jewelry, the Underwriters argue that he is not a carrier. On the other hand, Capri contends that its claim does fall within the exception to the unattended vehicle exclusion because the term "carrier" as used in the subject exclusion is

susceptible to two or more reasonable interpretations that can fairly be made and is thus ambiguous.[5] Specifically, Capri claims that an interpretation that can fairly be made is that Mr. Steiger, as an independent dealer to whom Capri had entrusted its goods, was a carrier of those goods.

### I. *Is The Term Carrier Ambiguous?*

 The Court must first decide whether the term "carrier" as used in the exception to the unattended vehicle exclusion is ambiguous. Under Florida law, interpretation of an insurance contract, including determination and resolution of ambiguities, is a matter of law to decided by the Court. *See Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985); *See also Jones v. Utica Mut. Ins. Co.,* 463 So.2d 1153, 1157 (Fla.1985). The insurance policy at issue should be construed in its entirety and given the construction which reflects the intent of the parties. *See Gulf Tampa Drydock Co.,* 757 F.2d at 1174. The ordinary rules of construction require the Court to assess the natural and plain meaning of the policy language at issue. *See Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1382 (11th Cir.1993). If there is any ambiguity in the exclusionary provisions of an insurance policy, those provisions must be construed in favor of the insured, and against the insurer who chose the specific language in drafting the policy. *See Collins v. Royal Globe Ins. Co.,* 368 So.2d 941, 942 (Fla. 4th DCA 1979). However, Courts may not rewrite contracts or add meaning in order to create an ambiguity where none exists. *See State Farm Mut. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla.1986). Moreover, where the language of an insurance policy is clear and unambiguous on its face, the policy must be given full effect. *See State Farm v. Metropolitan Dade County,* 639 So.2d 63, 65 (Fla. 3d DCA 1994).

---

**5.** Capri is not disputing the jury's findings in Steiger's case that the jewelry was stolen from an unattended vehicle. Instead, Capri is proceeding here under the exception to the unattended vehicle exclusion by arguing that Mr. Steiger was a carrier. In view of the fact that there is no

dispute on the issue of whether or not the vehicle was unattended, the Court agrees with the jury's finding in the Steiger case that the loss occurred while Mr. Steiger was not "in or upon" the vehicle carrying the property.

■ Despite the principle that policy provisions which tend to limit liability must be construed liberally in favor of the insured and against the insurer, the Court finds that the term "carrier" as used in the exception to the unattended vehicle exclusion is not ambiguous. The natural and plain meaning of the term "carrier" here is seen in the actual language of the policy. Specifically, the exception to the unattended vehicle exclusion states that, "this exclusion shall not apply to property in the custody of a *carrier mentioned in Section 2* hereof, or in the custody of the Post Office Department as first class registered mail." *See* '93 Policy, Section 7(I) (emphasis added). The Court thus must look to Section 2, which contains the limitations of liability, for the natural and plain meaning of the term carrier.

Before analyzing Section 2, it is important to look at the general definition of carrier. A carrier is generally defined as an "individual or organization engaged in transporting passengers or goods for hire." *Black's Law Dictionary* (6th Edition 1990). The only provisions in Section 2 that refer to the transit of goods by individuals or organizations are Sections 2(B)(1) and 2(D). Section 2(B)(1) refers to property which is in transit by first class registered mail, railway express, or by armored car service. Similarly, Section 2(D) refers to "shipments in transit" by several commercial transporters of goods, including customer parcel delivery services, waterborne or air carriers, and passenger bus lines. All of these aforementioned organizations are in the business of transporting goods for hire. The actual language of the policies as seen in Section 2 thus indicates that the term carrier is meant to encompass only entities in the business of transporting goods for others. *See Acceleration Nat'l*

*Serv. Corp., v. Brickell Fin. Servs. Motor Club, Inc.,* 541 So.2d 738, 739 (Fla. 3d DCA 1989), *review denied,* 548 So.2d 662 (Fla. 1989) (the actual language used in the insurance policy is the best evidence of the intent of the parties, and the plain meaning of that language controls). This interpretation is supported by another section of the policies which deals with loss or damage occurring in the course of transit, and makes specific reference to railroad, waterborne or air carriers, and motor carriers. *See* Section 7(E). In conclusion, the Court finds that the term "carrier" as used in the exception to the unattended vehicle exclusion is not ambiguous and is susceptible to only one reasonable interpretation that can fairly be made.[6] The plain meaning of the term "carrier" as used in the policies is consistent with the general definition of the term because it entails companies or entities engaged in the commercial transportation of goods for others.

## II. Is Mr. Steiger a Carrier?

Having determined that the term carrier is not ambiguous, the Court must now decide whether or not Mr. Steiger was a carrier. The record indicates that Mr. Steiger was an independent dealer who took the jewelry from Capri under consignment in accordance with the custom of the trade. As an independent jewelry salesman, Mr. Steiger obviously had to carry or transport jewelry. However, Mr. Steiger is not in the business of transporting goods for hire like the organizations listed in Section 2.[7] His job as a consignment salesman is to sell jewelry, not to transport it. The Court agrees with the Underwriters that transportation by Mr. Steiger of his stock in trade is only incidental to his occupation as an independent dealer. Since Mr. Steiger is not an individual en-

6. Capri argues that even if the Court finds that the term carrier is susceptible to only one meaning, the Court should examine the affidavit of Steven M. Wexler in order to determine whether a latent ambiguity exists. A latent ambiguity has been defined as an ambiguity where the language employed in the policy is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two possible meanings. *See Drisdom v. Guarantee Trust Life Ins. Co.,* 371 So.2d 690, 693 (Fla. 3d DCA 1979). After reviewing Mr. Wexler's affidavit, the Court finds that it does not create a latent ambiguity.

7. A review of Section 2 indicates that Mr. Steiger qualifies as "a dealer in property of the kind insured hereunder not employed or associated with the Assured" as described in Section 2(B)(3). However, consignment salesmen such as Mr. Steiger are not listed in any of the subsections that refer to individuals or organizations that transport goods for hire.

gaged in the business of transporting goods for hire, the Court finds that he is not a carrier as that term is interpreted under the actual language of the subject policies.[8] Therefore, because Mr. Steiger was not "in or upon" the vehicle when the jewelry was stolen and he is not a carrier, Capri is not entitled to recover under the terms of the policies because its claim is barred by the unattended vehicle exclusion.

## CONCLUSION

For the reasons stated above, it is

ADJUDGED that the Underwriters' Motion for Final Summary Judgment is GRANTED. The interpretation of the term carrier urged by the Underwriters is not strict or narrow and is the only reasonable interpretation that can fairly be made. The Court would be improperly rewriting the policy to provide coverage where none exists if it were to adopt Capri's interpretation of the term carrier. Accordingly, it is

ADJUDGED that Defendant's Motion for Final Summary Judgment is DENIED. Finally, it is

ADJUDGED that this case is DISMISSED with prejudice in view of the Court's Order Granting the Underwriters' Motion for Final Summary Judgment.

DONE AND ORDERED.

---

8. The Court chooses not to follow the majority opinion in *Rothstein v. Aetna Ins. Co.*, 216 Pa.Super. 418, 268 A.2d 233 (Sup.Ct.Pa.1970). The ordinary and natural meaning of the term carrier does not include an individual who is selling goods on his own behalf or on behalf of others, as Mr. Steiger was when Capri's goods were stolen from his unattended vehicle. *See Rothstein*, 268 A.2d at 236 (Hoffman, dissenting).